**PEPSI–COLA BOTTLING CO. OF WASH-INGTON, D. C., Inc., a corporation, Petitioner,**

v.

**DISTRICT OF COLUMBIA, Respondent.**

**No. 18107.**

United States Court of Appeals District of Columbia Circuit.

Argued April 9, 1964.

Decided June 4, 1964.

Mr. Werner Strupp, Washington, D. C., with whom Mr. Joseph A. Kaufmann, Washington, D. C., was on the brief, for petitioner.

Mr. Robert E. McCally, Assistant Corporation Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Assistant Corporation Counsel, and Henry E. Wixon, Assistant Corporation Counsel, were on the brief, for respondent.

Before BASTIAN, BURGER and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

The District of Columbia taxing system continues to make a personal property tax applicable to tangible personal property used in business enterprises.[1] The roots of that tax in an earlier and simpler stage of our economic evolution are suggested by its prescription that assessment shall be "at not less than the full and true value thereof in lawful money" on a fixed day in the year, i. e., July 1. The procedure for assessing the tax involves the printing and distribution by the D. C. Finance Officer of forms upon which the property-owner makes a return of his property and its value. The Finance Officer may reject that valuation and make an assessment of his own. In such event, the property-owner may appeal to the District of Columbia Tax Court. That has happened here, and the matter is before us on a petition by the taxpayer to review the Tax Court's disposition of its appeal. We do not share the Tax Court's view that it was compelled to deny relief by judicial authority binding upon it.

I

Petitioner is a corporation engaged in the business of making non-alcoholic beverages and selling them in the District of Columbia and adjoining areas of Maryland. In that business it uses vending machines placed at a large number of separate locations throughout its market area. The parties stipulated that approximately fifty-two per cent of the total number of machines used by petitioner were to be considered as located in the District of Columbia and therefore subject to the tax. The number of individual units involved is indicated by the showing that, in respect of the years 1960, 1961, and 1962, in issue here, the vending machines used by petitioner totalled 3200, 3500, and 5500, respectively. These numbers do not, of course, imply that there is no change in the identity of the physical units used. New machines are placed in service from time to time, and older machines are constantly being retired or taken out of service temporarily for repairs. This process, of course, is geared to the daily needs of the business and not to the "tax day" fixed for the assessment of personal property. Both petitioner and the Finance Officer considered, therefore, that assessment should be made on the basis of an averaging of the useful lives and residual values of the machines on hand on the critical date; and the Tax Court appeared to recognize the necessity for this approach.[2]

The form distributed by the Finance Officer contained this specific instruction:

"Office furniture * * * machinery and equipment * * * and all other depreciable tangible property * * * must be reported under the proper classification. The values as reported must be consis-

1. Title 47 D.C.Code § 1202 reads as follows:

"All personal property in the District of Columbia subject to taxation shall be listed and assessed at not less than the full and true value thereof in lawful money."

Title 47 D.C.Code § 1208 exempts several classes of property from the tax, including most property devoted to non-commercial use. A 1954 amendment exempted household belongings from the tax. 68 Stat. 112 (1954). The Senate and House reports that accompanied the amendment stated:

"The taxation of this kind of personal property has been said to be 'an archaic, inequitable and inefficient method of taxation'; that it is a practical impossibility for assessors to find and properly assess such property; that few records, if any, are kept by a householder; and that the assessor must depend, for the most part, upon returns filed by the owners of the property. See The Taxing System of the District of Columbia (29 Taxes 359, 360 (May 1951))."

S.Rep.No.1185, 83d Cong., 2d Sess. 9 (1954); H.R.Rep.No.1358, 83d Cong., 2d Sess. 7 (1954).

2. The Tax Court commented as follows during the taking of evidence:

"Let's suppose that your life of the machine was 7 years, 8 years, or 5 years. What is the average life? Let's say that the average life is three years. You can use that to determine the value. There is no other way I see to do it."

tent with books of the taxpayer, except for property that is fully depreciated."

In compliance with this direction, petitioner reported its machines in terms of the values shown on its books, that is to say, cost less depreciation. In making this computation, petitioner estimated that its machines had an average useful life of five years and an eight per cent residual value. The Finance Officer made a differing assessment. This difference, however, resided solely in the employment of an average useful life of eight years, rather than five, and a twenty-five per cent residual value, rather than eight per cent.

The parties initially confronted each other in the Tax Court, therefore, with no division between them as to the method used to ascertain the taxable value of the machines. They parted company only over the question, in applying that method, of the appropriate measure of average useful life and residual value. The evidence adduced in the Tax Court was directed to that issue. After the hearing was completed, the Tax Court made specific findings that the machines had an average useful life of six years, and a residual value of eight per cent.

One might think that this would conclude the recital of events preceding the invocation of our review jurisdiction, and that the issue now to be resolved by us is whether the Tax Court was justified in fixing upon a six-year useful life, as contrasted with the five and eight years used respectively by the parties. He would be wrong. The arcane mysteries of personal property assessment are not to be so airily ignored. Having resolved the only matter at issue between the taxpayer and the taxing authority, the Tax Court went on to hold that both were wrong in the method used to determine value. The consequence of this was, in the Tax Court's view, to leave the assessment made by the Finance Officer standing, the burden of proof having been on the challenging taxpayer to show wherein the official assessment failed to reflect the statutory criterion of "full

and true value * * * in lawful money." Thus, having just found that the Finance Officer's assessment was invalid because book value is not necessarily the same on "tax day" as the "full and true value" prescribed by the statute, the Tax Court then allowed the assessment, concededly reflecting depreciated cost, to stand because petitioner had failed to show that it was not the "full and true value"—and all this in the face of the Tax Court's own determination, after hearing, that the Finance Officer had used an erroneous measure of average useful life. Thus, the Tax Court would seem to require that one challenging an assessment made by the Finance Officer, notwithstanding its incorrectness, must come forward with evidence of *actual* value on the tax day; and apparently this would mean physical appraisal of each machine or other evidence of what each piece of equipment would have sold for in the market on the tax day.

The Tax Court's opinion is not lacking in recognition of its highly anomalous aspects. The Court purports to be "not unmindful that the ruling made herein will in many instances result in hardship, not only to taxpayers, but to the assessing authority as well." But, in the light of the case law existing in this and other jurisdictions, the Tax Court concluded that no other result could "lawfully be reached." Whatever may be true with respect to the law of personal property taxation as developed in other jurisdictions, either now or formerly afflicted with this increasingly archaic form of raising revenue, we believe that the Tax Court, at least upon the facts of this case, took too narrow a view of its area of maneuver under our decisions.

## II

The constrictions felt by the Tax Court are attributed by it almost entirely to District of Columbia v. Morris, 81 U.S. App.D.C. 356, 159 F.2d 13 (1946). It points to the assertion made in that opinion that "fair cash value and cost depreciated on a straight-line basis are different concepts"; and deduces from

this that neither the District of Columbia nor a taxpayer may assess personal property tax by reference to book value. We note, however, that that statement was made in refutation of a claim by the District that the taxpayer was estopped from contending for any value other than that of cost less the annual depreciation allowances shown on the taxpayer's *income* tax returns. In filing her *personal property* tax returns, the taxpayer had used different—and larger—depreciation allowances; and the District was urging that these must yield to the former. As in the case before us, the matter at issue between the District and the Taxpayer in *Morris* was the proper rate of depreciation (*i. e.,* the useful life) of the property in question. There being no findings below, this court remanded the case for further proceedings. We do not find in all this anything which forbade the Tax Court from going ahead in the case now before us and directing that the tax be computed on the basis of the findings made by it as to the correct measure of the average useful lives of petitioner's vending machines.

It is, of course, true that, as was said in *Morris,* fair cash value and cost depreciated are "different concepts." But, as was also said in *Morris* in the very next sentence, "one might be evidence of the other, and they might coincide, but the assertion of one at one figure could not estop a taxpayer to assert the other at a different figure." What the court did in *Morris* was to hold that, in a context where there was no finding by the Board of Tax Appeals, a taxpayer was not to be estopped in claiming one measure of useful life by what he had represented such useful life to be for another purpose.

■■ It is also true, as was further said in *Morris,* that the assessing authority is not to "be held to any fixed formula, or specific catalog of data, in determining his proposed assessments, and is entitled to base his action on the best information he can procure"; and, when the assessment is challenged, the "burden of proof is upon the taxpayer." But we do not look upon this as meaning that where the taxing authority and the taxpayer are in full agreement as to the method to be used in assessing a particular type of property, and differ only as to a factual element in the application of that method, the Tax Court, after receiving evidence with respect to this difference and resolving it by a specific finding, must then allow the concededly faulty assessment to stand because the taxpayer has not proven that it is not "fair cash value." This reduces to absurdity any rational system of assessing property in the first instance, and of providing effective exploration, review, and resolution of legitimate differences that may arise in that process.[3]

3. The only other case in this jurisdiction cited by the Tax Court is District of Columbia v. Capital Laundry & Dry Cleaners, Inc., D.C.Mun.App., 106 A.2d 695 (1954). This was a suit by a taxpayer in the Municipal Court to recover funds seized by distraint to satisfy additional assessments of personal property tax. The Municipal Court of Appeals held that plaintiff had not discharged its burden of proof by evidence of value based upon cost depreciated over an assumed useful life of ten years. We note that, in its opinion, the court expressed some doubt about the soundness, on the facts of record, of the particular depreciation formula used. In any event, there were no findings as to what the proper formula was, and the parties faced each other in a posture, and in a forum, quite different from those involved here. The Tax Court is specifically directed by the statute to entertain an appeal from a reassessment made by the Finance Officer, and, in so doing, to "hear and determine all questions arising on said appeal," to "make separate findings of fact and conclusions of law," and to "render its decision thereon in writing." 47 D.C.Code § 2403. The Tax Court is, it seems clear, an integral part of the machinery provided for the assurance of rational assessments of taxes in the District of Columbia, and it does not function like, or under the same rules as, a court of general jurisdiction adjudicating a lawsuit to recover money paid. Indeed, in a case such as this, it would appear to be true that legal doctrines developed by courts of general jurisdiction in tax cases, such,

■ The Finance Officer did not have to use depreciated cost as the standard of value here, but he chose to do so, presumably because, by reason of the nature of the property involved, it was the most accurate measure which could feasibly be employed. When his particular application of this standard is challenged, we do not think that the taxpayer must either bow to the official assessment or be remitted to proving value on some other—and, on this record, highly impracticable—basis. If this were true, the Tax Court should not have wasted any time taking extensive evidence on the question of useful lives. It should have told petitioner at the outset that, unless it was prepared to show value on some basis other than that used, albeit erroneously, by the Finance Officer, there was no point in going ahead with the hearing and petitioner should promptly pay up in line with what the Tax Court ultimately found to be a defective assessment.

■ The Tax Court was, in our judgment, correct in not choosing this course at the outset. It received evidence on useful life and made its own finding from this evidence. Only then did it err by failing to direct that the tax liability be computed on the basis of its findings as to proper depreciation rates, which find-

ings we have no reason to disturb. Its reason for this omission is said to be that there "was no evidence as to the actual value of any of the machines on the tax days." From what the Tax Court said in this regard, we can only infer that this "actual value" might possibly have been proved by individual examinations and appraisals of each machine. Under the "tax day" approach of personal property taxation, these would presumably have to be accomplished during the business hours of one day at several thousand separate places. In a case such as this, the unreasonableness of such a burden might call into question the validity of the tax as so administered.

It will be time enough to decide whether this has to be done when the taxing authority itself insists upon it. It has not done so in its own assessment in this case, nor, if we look to what appears to be the instruction on the form distributed by it, does it do so generally. It is no secret that the personal property tax does not accommodate itself easily to the complexities of modern life. This is especially true of businesses which use in their operations many small units of equipment, scattered in location and constantly changing in identity.[4] Assessment under these conditions bears little

for example, as the principle that assessments will not be invalidated by reason of error of judgment, bear little, if any, relation to the job the Tax Court has been given to do.

4. As noted in footnote 1, *supra*, the reason, at least in part, for the abolition of the personal property tax on household belongings was the "practical impossibility for assessors to find and properly assess such property * * * [and] that few records, if any, are kept by a householder * * *." As to businesses, of course, records are kept; and it can be assumed that Congress intended some reliance on these records, so long as they are bona fide, in order to avoid the "practical impossibility" found with regard to assessment of personal property. See also H.R.Rep. No. 195, 83d Cong., 1st Sess. 2 (1953), as follows:

"The Commissioners believe that existing tax on the tangible personal property such as would be exempted if the bill

were enacted should be repealed. The statute under which such property is now taxed is about 50 years old. While at the time such tax was levied it was a commonly accepted method of raising revenue, since that time the practice of raising revenue by the taxation of such tangible personal property has fallen into disuse in many tax jurisdictions. Such a tax is difficult to administer and as a result of this fact often results in inequities. For example, it puts the burden on the citizen to place a value upon property which may have been purchased many years prior, and the Tax Assessor has the duty of determining whether that value is proper. Such a method of taxation, predicated as it is upon opinion as to value, is manifestly unsound from a practical viewpoint. Because of honest differences of opinion between taxpayers and taxing authorities as to the value, much litigation has arisen under the present District statute."

resemblance to that of the days when the assessor came round in person on "tax day" to view the horse and wagon drawn up expectantly in the barn lot. The taxing officials at the assessment level in the District of Columbia do not treat the two as the same. We do not see why the courts should do so.

The decision below is reversed, and the case remanded for further proceedings not inconsistent herewith.

It is so ordered.